MORLEY BROS. v. NATIONAL LOAN & INVESTMENT CO.

BUILDING AND LOAN STOCK—EXEMPTIONS—HOMESTEAD.

 3 How. Stat. § 3981*p*, which provides that building and loan stock in the hands of a householder, to the amount of $1,000, shall be exempt from levy and sale on execution or attachment, except where the shareholder has "a homestead exempted under the general laws of this State," renders exempt from execution shares held by a member whose only homestead interest is that which he has in property belonging to his wife, and occupied jointly with her.

*Certiorari* to Wayne; Carpenter, Hosmer, Frazer, Donovan, and Lillibridge, JJ. Submitted April 4, 1899. Decided May 9, 1899.

*Mandamus* by Morley Brothers, a corporation, to compel the National Loan & Investment Company to transfer to relator certain shares of stock in respondent corporation. From an order denying the writ, relator brings *certiorari.* Affirmed.

*Keena & Lightner,* for relator.

*Ralph L. Aldrich,* for respondent.

LONG, J.   This case comes into this court by writ of *certiorari* to review the action of the circuit court for Wayne county in denying the petition for a writ of *mandamus.*

It appears that Morley Bros., doing business at Saginaw, obtained a judgment in the Saginaw circuit court against Fred E. Talmadge, who resides at Saginaw.   The judgment not being paid, an execution was issued to the sheriff of Wayne county, and levied upon 20 shares of stock of the respondent company, a corporation organized under Act No. 50, Pub. Acts 1887 (3 How. Stat. § 3981*a et seq.* ).   The stock was sold upon the execution, and bid in by the petitioner, and a demand made upon the respondent company for a transfer of the stock to it.   This was refused on the ground that the stock was exempt from levy and sale on execution.

Section 16 of the act under which the respondent corporation was organized provides:

"The shares held by any member, being a householder, of any association incorporated under the provisions of this act, shall be exempted from levy and sale on execution or attachment to the amount of one thousand dollars in such shares at the par value thereof: *Provided,* that such exemption shall not apply to any person who shall have a homestead exempted under the general laws of this State." 3 How. Stat. § 3981*p.*

It was shown that Talmadge, with his wife and children, has lived for the past seven years at No. 520 Hayden street; that the property belongs and has belonged to the

wife since 1891, and is of the value of about $2,500, but covered by a mortgage of $2,382; and that Talmadge owns no real estate.

The claim of the petitioner is that the homestead exemption provided for by section 7721, 2 How. Stat., is intended for the family, and is exempt in the interest of all the members of the family, equally when the title to the property is in the husband or in the wife, and that, therefore, Mr. Talmadge, the holder of this stock, has a homestead, within the meaning of section 16 of the act.

The land in question belongs to the wife, but is the family homestead. As said by this court in *Rowe* v. *Kellogg*, 54 Mich. 206:

"There can be no question but that the husband has a valuable and important interest, which the courts will protect. As head of the family, he has possession jointly with his wife, and has, therefore, a right to complain of any unlawful interference. * * * The land is in his tenancy, while the family occupy it, as distinctly as if leased to him."

The tenancy here is not, however, sought to be disturbed. The only question is, Has Mr. Talmadge a homestead, within the meaning of this act? Does the fact that he occupies a dwelling house owned by his wife prevent him from claiming the benefit of section 16? He has a beneficial interest in the homestead owned by the wife, so long as she occupies it, but it is an interest which inures to him only as an incident to his being the head of the family. The wife may sell the property without the consent of the husband, and thus defeat his homestead interest and that of the family, or she may abandon her husband and family, and oust them from possession of the property which has been occupied as a home. The nature of and limitations on the husband's interest in the wife's homestead are fully discussed in *Buckingham* v. *Buckingham*, 81 Mich. 89. It was said:

"As against creditors of the wife, he is entitled to be protected in his possession and occupancy of the home-stead. The Constitution and laws, however, confer upon

married women such absolute right to the disposition of their own separate property that she may convey the homestead by deed without the husband's joining in the instrument. If she may do this voluntarily, and without his consent, there would seem to be no legal principle which would prevent her from voluntarily deserting her husband and abandoning her homestead."

It can hardly be said that such a homestead as here described is the homestead which the legislature intended, by the act, should deprive the owner of stock of the right to the exemption up to $1,000 from levy and sale on execution. The purpose of the act was to enable persons of small means to acquire a homestead, and we think it cannot be said that the homestead intended by the act which would defeat the exemption was one resting in the unstable holding which the husband might have in property owned by the wife.

The court below very properly denied the writ of *mandamus*. The order will be affirmed.

The other Justices concurred.